**Carmen E. MASSON, Plaintiff,**

v.

**THE SCHOOL BOARD OF DADE COUNTY, FLORIDA,**
**Defendant.**

**No. 97–4404–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 19, 1999.

---

Stewart Lee Karlin, Fort Lauderdale, FL, for Plaintiff.

Phyllis Ober Douglas, Dade County School Board, Miami, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment as to Count I–Hostile Work Environment (DE # 33).

UPON CONSIDERATION of the motion, responses, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## BACKGROUND

Plaintiff Carmen Masson ("Masson") filed a two-count amended complaint alleging hostile work environment (count I)[1] and failure to promote (and demoting) (count II), both in violation of Title VII of the Civil Rights Act of 1964, as amended. Defendant Dade County School Board (the "School Board") has answered the complaint and now files this motion for partial summary judgment as to Masson's claim for hostile work environment.

## FACTS

The undisputed facts as taken from Masson's amended complaint and the record are as follows:[2] Masson was hired by the School Board in 1983 as a culinary arts teacher at Lindsey Hopkins Technical Education Center and served there until July 1997. Since 1992, Masson alleges she was subjected to a hostile work environment based upon the actions and explicit sexual remarks of John Leyva ("Leyva"), the school principal since 1991 and Masson's supervisor. The following are allegations made by Masson and undisputed by the School Board concerning Leyva's conduct:

(1) She was offended when she heard Leyva said she was good-looking in addition to being the most competent employee in the kitchen;

(2) At a grievance hearing, Leyva stated "he wouldn't kiss [Masson's] face but would kiss [Masson's] ass for all the work she had done at Lindsey Hopkins to put it on the map;"

(3) Leyva and two female staff members engaged in an inappropriate conversation in Leyva's office concerning sexual portraits, lingerie and sex toys. Masson excused herself from the conversation and left the office;

(4) Leyva was always making remarks about Masson's hair and clothing. In one incident, Leyva said "Your hair looks great. You look like a lion" and he started

to approach Masson but stopped and said "I forgot you're married;"

(5) Masson saw Leyva kissing a secretary at school;

(6) In a meeting, after Masson was able to help Leyva obtain additional seating at a school event, Leyva leaned over and kissed Masson on the cheek or jaw; and

(7) An assistant principal said that he would be administering the cafeteria like "ladilla" which Masson took to mean he would be all over the place, like crabs.

Masson also alleges Leyva has a pattern and practice of sexually harassing his other subordinate female employees.

## DISCUSSION

### I. Summary Judgment Standard

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole

1. Although not stated specifically in the amended complaint, Masson's hostile environment allegations in count I pertain to a sexually harassing hostile environment and the Court will construe count I as such.

2. Plaintiff makes several allegations in count I of the amended complaint that relate to her failure

to promote claim. Because the School Board is moving for summary judgment only as to count I, the facts as laid out only will detail Masson's allegations of hostile work environment sexual harassment and will not address her failure to promote claim.

could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the non-moving party:

> may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Rule 56(e), Fed.R.Civ.P. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmovant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505. Additionally, the failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. Hostile Work Environment Sexual Harassment under Title VII .

The burden of proof in a Title VII action is set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013 (11th Cir.1994). Initially, the plaintiff must establish a prima facie case of hostile work environment.

### A. Prima Facie Case

Hostile work environment sexual harassment occurs when "an employer's conduct has the purpose or effect of unreasonably interfering with an individuals's work performance or creating an intimidating, hostile or offensive environment." *Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989). To establish a prima facie case for hostile work environment sexual harassment, Masson must show the following: (1) she belonged to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) the School Board knew or should have known of the harassment and failed to take prompt remedial action. *Henson v.. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982). The Supreme Court has instructed that for such an allegation to be actionable, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). Thus, a court should determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the conduct, its severity and whether it unreasonably interferes with an employee's work performance or is mere offensive utterance. *Id.* This inquiry prevents Title VII from becoming a "general civility code" and filters out "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 2284.

The School Board initially argues Masson cannot prove a prima facie case for hostile work environment sexual harassment. The Court disagrees.

Not surprisingly, the School Board dismisses Masson's allegations as nonactionable, mere offensive speech. This Court certainly has addressed allegations far more outrageous and demeaning than those alleged by Masson. And while Masson's alle-

gations are, in the Court's view, borderline, the Court believes they were severe and pervasisve enough to constitute sexual harassment. There is no question Masson subjectively felt the comments were sexually objectionable and the Court believes a reasonable person would see them that way.[3] Accordingly, the Court finds Masson has established a prima facie case of hostile work environment sexual harassment.

## B. Employer Liability

■ The Supreme Court in *Faragher* recently addressed the issue of an employer's liability for a hostile work environment created by an employee's supervisor. The Court stated that "an employer is subject to vicarious liability to a victimized employee for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher*, 118 S.Ct. at 2292–93; *see also Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The Court, however, created an affirmative defense for employers where, as here, no tangible employment action was taken against the employee.[4] To take advantage of the defense, the School Board must show (1) "that [the School Board] exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "that [Masson] unreasonably failed to take advantage of any preventive opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 118 S.Ct. at 2293. The School Board argues it has met its burden under both prongs of the *Faragher* defense in that the School Board exercised reasonable care to prevent harassment and Masson never took advantage of the School Board's antiharassment policy.

■ With respect to the first prong of the defense, the Supreme Court has stated the following:

> While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.

*Faragher*, 118 S.Ct. at 2293. Here, it is undisputed the School Board has an officially promulgated, nond iscrimination/harassment policy and complaint procedure. In support of its argument, the School Board submits the affidavit of Rafael Urrutia, the Director for the School Board's Office of Equal Educational and Employment Opportunity. In his affidavit, Urrutia states that he conducts workshops and training sessions for supervisors concerning compliance with federal and state statutes and School Board rules that prohibit sexual harassment. Urrutia further states the School Board's policy is widely disseminated to employees and that the policy provides a comprehensive procedure for processing harassment complaints. In response, Masson argues the School Board has "failed to develop a comprehensive antiharassment policy" and in fact did *not* provide harassment training to supervisors. Masson, however, does not provide factual support for her argument and essentially rests on conclusory allegations about the deficiencies in the School Board's policy. Thus, because Masson does not provide factual evi-

---

**3.** The Court is somewhat bothered that the School Board, in arguing that Masson was not sexually harassed, is so cavalier about Masson's allegations. For instance, the School Board argues that "the fact that her supervisor said she was good looking in addition to being the most competent employee in the kitchen should be considered a compliment and certainly not inappropriate, let alone sexual harassment." And with respect to Masson's allegations that Leyva kissed her, the School Board argues that "it seems clear that in this County, if every individual who was kissed on the cheek took offense, there would be a lot of offended residents." Were these comments isolated, the Court may view the School Board's statements simply as

argumentative rhetoric. However, it is well known—and acknowledged by the School Board—that the School Board has in the past experienced problems with other supervisors concerning allegations of sexual harassment. Thus, while the School Board is entitled to present its arguments in any form it chooses, it appears to this Court that the School Board, rather than so flippant, should be extrasensitive to the types of allegations made by Masson.

**4.** Although Masson alleges she was denied a promotion and unfairly demoted, Masson does not dispute the *Faragher* defense is applicable in this case.

dence to counter Urrutia's statements concerning the School Board's policy, Urrutia's affidavit is essentially undisputed. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."). Thus, the Court finds the School Board has satisfied the first prong of the *Faragher* defense by showing it has exercised reasonable care to prevent sexual harassment by creating and implementing an antiharassment policy and complaint procedure.

With respect to the second prong of the defense, the Supreme Court has stated:

And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense

*Faragher,* 118 S.Ct. at 2293. The School Board argues Masson failed to reasonably avail herself of the avenues created by the School Board's policy to put the School Board on notice of the ongoing harassment. Masson states she complained to Roger Cuevas, the Assistant Superintendent, about being replaced by Tom Saslgiver (a male chef) and that Cuevas "understood my claim to be gender discrimination." Masson further states she complained about the same incident (being replaced) to David Schleiden, the Vocational Supervisor, and also filed six grievances with her union.[5] Finally, Masson claims she faxed a memorandum of understanding to Nelson Diaz, the Superintendent of Management and Labor Relations.[6]

It appears the focus of Masson's communication with these individuals concerned her job reassignment rather than Mr. Leyva's alleged inappropriate conduct. That Masson

believes Cuevas understood her claim to be gender discrimination cannot, by itself, support Masson's argument that she complained to others about Leyva's alleged sexual harassment. More importantly, it is undisputed that Masson never took advantage of the School Board policy and never filed a complaint with Urrutia.[7] Masson never argues she was unaware of the policy and does not assert any reason why she chose not to follow its procedures.

While recognizing the "enormous difficulties" involved in lodging complaints about sexual harassment in the workplace, the Eleventh Circuit recently noted:

Federal law has now attempted to correct the problem of workplace discrimination, but it cannot be done without the cooperation of the victims, notwithstanding that it may be difficult for them to make such efforts. When an employer has taken steps, such as promulgating a considered sexual harassment policy, to prevent sexual harassment in the workplace, an employee must provide adequate notice that the employer's directives have been breached so that the employer has the opportunity to correct the problem.

*Coates v. Sundor Brands, Inc.,* 164 F.3d 1361, 1365 (11th Cir.1999). Thus, while the School Board's hands may not be clean,[8] the Court cannot in every instance hold it liable for actions about which it is unaware—especially when the complainant does not follow the procedures provided for in the School Board's policies. *Id.* Accordingly, the Court finds the School Board has met its burden under the second prong of the *Faragher* defense by showing that Masson unreasonably failed to take advantage of any preventive or corrective opportunities provided by the School Board.

Because the School Board has satisfied its burden under *Faragher,* the Court finds

---

5. Masson does not state the basis for filing the grievances with her union nor does she provide copies of the grievances.

6. The entire text of the fax, however, states: "This correspondence is to request a memorandum of understanding regarding the above change in my teaching assignment as per Mr. Leyva's Memo # 104 dated July 11, 1997."

7. In his affidavit, Urrutia states that Masson "did not utilize [the] Complaint process at any point in time, nor was [Urrutia] made aware of her complaint before receiving notice from the federal EEOC."

8. The School Board does acknowledge that the allegations made by Masson involve "often crude and inappropriate" behavior.

**1360**

there is no genuine issue of material fact that exists to support a finding either (1) that the School Board did not exercise reasonable care in preventing the harassment or (2) that Masson herself acted reasonably to put the School Board on notice of a problem. As a result, summary judgment in favor of the School Board as to count I of the amended complaint is appropriate.

## CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment as to Count I–Hostile Work Environment is GRANTED.