**CENTENNIAL BANK, a foreign corporation, Plaintiff,**

v.

**THE NOAH GROUP, LLC, a Florida limited liability company; Daniel J. Duffy; Joseph Cannova; Anthony Sauta; Ronald J. Costello; R. Reginald Hyde; John M. Reynolds; George P. Irish; and Sandra K. Irish, Defendants.**

Case No. 10–10007–CIV.

United States District Court, S.D. Florida.

Dec. 2, 2010.

---

Michael O. Mena, Christopher Stephen Carver, Akerman Senterfitt, Miami, FL, for Plaintiff.

Ira Steven Silver, Silver & Silver, Miami, FL, Wayne Larue Smith, Smith Law Firm, Key West, FL, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Plaintiff Centennial Bank's ("Centennial") Motion for Summary Judgment (ECF No. 108). Defendants Joseph Cannova ("Cannova")[1], Ronald J. Costello

---

1. It is unclear to the Court why Defendant Cannova is included in the Response submitted by these Defendants. There is currently a default judgment against him (ECF No. 35) and he has indicated he does not wish to be represented by attorney Ira Silver who filed

("Costello"), R. Reginald Hyde ("Hyde"), John M. Reynolds ("Reynolds"), Anthony Sauta ("Sauta"), and The Noah Group, LLC ("Noah Group") filed a Response (ECF No. 115) and Defendants George P. Irish and Sandra K. Irish ("Irishs") filed a Response (ECF No. 121). A Reply was also filed (ECF No. 127).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND [2]

This case involves a lender, Centennial, suing to foreclose on its mortgage and security interest based on the payment default of its borrowers in a piece of property located in Monroe County, Florida.[3] On or about December 16, 2004, the Marine Bank of the Florida Keys ("Marine Bank") agreed to loan $1,880,000.00 to Sauta, Costello, Hyde, Reynolds, Cannova, and Duffy ("Borrowers"[4]), evidenced by an Adjustable Rate Note from Borrowers to Marine Bank. The debt was secured by a mortgage signed on the same date, granting Marine Bank a mortgage lien and security interest in the property. On January 1, 2006, the Adjustable Rate Note was renewed. Borrowers executed and delivered a new Adjustable Rate Note ("the Note") to Marine Bank in the principal amount of $1,879,949.07. On March 16, 2006, Marine Bank and the Borrowers entered into a Mortgage Modification, Assumption and Renewal Agreement ("Modification Agreement"), in which Reynolds purchased and assumed the indebtedness of non-party Frank J. Navarro, an original borrower. Thereafter, on March 27, 2006, Borrowers executed a Warranty Deed in favor of the Noah Group, who is presently record titleholder of the property.

In December 2008, Centennial merged with Marine Bank to become successor by merger to the Note, the Mortgage Modification, the Warranty Deed, and any other loan documents securing the obligation of the loan. Accordingly, the loan documents are owned and held by Centennial Bank, and the loan is payable to Centennial Bank.

The loan required monthly payments on the first of each month beginning May 1, 2006. Beginning July 2009, Defendants made no further payments to Centennial. On January 14, 2010, Centennial filed a two-count complaint based on the Borrowers' default. In Count I, Centennial is seeking to collect the money owed to it under the terms of the Note. Centennial

---

this Response. *See* Mot. to Withdraw Doc. (ECF No. 62).

**2.** The facts here are taken from Plaintiff's Statement of Facts (ECF No. 9). Defendants did not submit a statement of material facts as required by Local Rule 7.5(b). Because Defendants failed to controvert Plaintiff's Statement of Facts and because Plaintiff's facts are supported by evidence in the record, in accordance with the Local Rule 7.5(d) Plaintiff's facts are deemed admitted. Additionally, Plaintiff's have attached as evidence all relevant documents including the Note, the Mortgage Modification, the Warranty Deed, and Default Notices.

**3.** Defendant Borrowers had filed a cross-claim against the Irishs and a third-party claim against individual Timothy Koenig. These claims were dismissed at the Motion to Dismiss stage. The complete procedural history and the facts of those claims need not be discussed here. *See* Order Granting Third–Party Def. Mot. Dismiss (ECF No. 145); *see also* Order Granting Mot. Dismiss Cross–Claim (ECF No. 146).

**4.** At that time Frank J. Navarro was also a party to the loan agreement; however, his interest in the property at issue was later purchased by Defendant Reynolds and before the Borrowers defaulted. Thus, Frank J. Navarro is not a party to this case.

alleges it is owed $2,004,326.34 and reasonable attorneys' fees. In Count II, Centennial is suing to foreclose on the mortgage. Centennial has therefore included the Noah Group, as record titleholder of the property, and the Irishs, who hold a second mortgage on the property, as additional defendants under this claim for relief. The clerk has entered default judgments against Defendants Duffy, Cannova, and the Irishs.

## II. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

■■■ Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. ANALYSIS

■■■ Centennial seeks to foreclose its mortgage and security interest in the Monroe County property based upon the payment default of Borrowers. Centennial claims that Borrowers have not paid the mandatory monthly installments of principal and accrued interest due under the loan documents since July 1, 2009. Compl. ¶ 26 (ECF No. 1). "Under Florida law, failure to make a timely installment payment entitles the holder of a note and mortgage to foreclose in accordance with the terms of the instruments." *Fed. Sav. & Loan Ins. Corp. v. Two Rivers Assocs., Inc.*, 880 F.2d 1267, 1273 (11th Cir.1989). Centennial Bank has shown that Borrowers have not made payments in compliance with the loan agreement. *See* Notices of Default (ECF No. 1–12). It has submitted the loan documents as well as copies of notices of default, sent to the Borrowers via certified mail. By their own admission, Borrowers stopped making payments to Centennial in July 2009. Defendants' Resp. Summ. J., at 3 (ECF No. 115). Accordingly, Centennial is entitled to enforce the terms of the Note and the Mortgage Modification agreements.

Though Borrowers asserted several "affirmative defenses" in their answers, none have merit. Defendant Borrowers claim that Centennial failed to attach documents

to the Complaint indicating that it was a successor in interest to Marine Bank. This is not an affirmative defense; moreover, Articles of Merger were filed with the Florida Secretary of State and Arkansas State Bank Department. Lankford Aff. Ex. A (ECF No. 107–2). Defendant Borrowers also claim that Plaintiff failed to allege the homestead status of the property. Under Florida law, homestead status is only afforded to properties owned by a "natural person." Fla. Const. art. 10, § 4. The property at issue is owned by the Noah Group, a limited liability corporation. Thus, the affirmative defense is inapplicable.

 Defendants' third affirmative defense is that Centennial has violated the Fair Debt Collection Practices Act ("FDCPA"), for failing to provide the borrowers proper notice under the statute. The statute is irrelevant in this case because Centennial Bank is not a "debt collector" within the meaning of the statute. The FDCPA clearly defines the term "debt collector" and excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person[.]" 15 U.S.C. § 1692a(6)(F). Here, Centennial Bank is not a "debt collector"—it arguably originated the debt as a merged entity with Marine Bank; alternatively, it obtained the debt upon merging with Marine Bank when the debt was not in default. Under either analysis, the FDCPA does not apply to this case. Borrowers also brought a counterclaim against Centennial Bank under the FDCPA. Counterclaim (ECF No. 42). For the foregoing reasons, the Court sua sponte dismisses Defendants' Counterclaim.

In their Answers Borrowers also claim that paragraph 19 of the Mortgage Modification entitles them to reinstate the promissory note and mortgage. Borrowers are only afforded this reinstatement if they have paid the lender—Centennial—all sums due, curing any default. Mortgage Modification, Assumption, and Renewal Agreement, Ex. C2, ¶ 19 (ECF No. 1–4). Borrowers have not made such payments.

Accordingly, Defendants have not asserted a valid affirmative defense and Centennial is entitled to recover under the terms of the loan documents.

Plaintiff further asks that Final Default Judgment be entered against Cannova, Duffy, and the Irishs as these Defendants had failed to appear before the Court and Plaintiff obtained a Clerk's Entry of Default against them. *See* Order by Clerk of Entry of Default (ECF No. 35). It appears that Cannova has responded with the represented Borrowers in Defendants' Response to Motion for Summary Judgment (ECF No. 115). The Irishs also filed a Response (ECF No. 121) stating that they do not oppose the validity or priority of Centennial's mortgage. Cannova and the Irishs will therefore be subject to the Court's Order of Summary Judgment in favor of Plaintiff. Duffy did not respond to the Motion for Summary Judgment and has failed to appear before the Court. Thus, this Court will grant a Final Default Judgment against Duffy.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Plaintiff Centennial Bank's Motion for Summary Judgment (ECF No. 108) is GRANTED. Plaintiff may seek reasonable attorneys' fees and costs in accordance with Local Rule 7.3. It is further

ORDERED AND ADJUDGED that Plaintiff's request for a Final Default Judgment against Defendant Duffy is GRANTED. It is further

ORDERED AND ADJUDGED that Defendants' Counterclaim (ECF No. 42) is DISMISSED WITH PREJUDICE. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.